UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHNNY LEE JONES, | Case No.: 3:22-cv-00502-ART-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | |
| SGT. STOLK, et al., | Re: ECF Nos. 3, 4, 74 |
| Defendants | |

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court are Plaintiff's motions for a preliminary injunction and/or temporary restraining order (TRO). (ECF Nos. 3, 4.)[1] The Office of the Attorney General (OAG) entered a limited appearance and filed a response. (ECF Nos. 16, 17, 18-1.)[2] Plaintiff filed a reply. (ECF No. 26.) Plaintiff improperly attempted to supplement his motions various times, filing documents in violation of the stay as well as the Local Rules, and the court has denied those requests. Plaintiff also recently filed another request for an evidentiary hearing in connection with his motions. (ECF No. 74.)

After a thorough review, it is recommended that Plaintiff's motions be denied.

---

[1] The motions are identical, but were docketed separately to reflect the nature of the relief sought, *i.e.*, preliminary injunction vs temporary restraining order.

[2] The OAG has since accepted service on behalf of some Defendants and their answer or other responsive pleading is due on May 2, 2023.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 7.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)

The court screened Plaintiff's complaint and allowed him to proceed with the following claims: an Eighth Amendment excessive force claim against Chet Rigney, Gonzales, and Guzman; a First Amendment retaliation claim against Drummond and Chet Rigney; a First Amendment retaliation claim against John Doe 1; an Eighth Amendment deliberate indifference to serious medical needs claim against Guzman, Gonzales, and Kicklord; a First Amendment retaliation claim against Lieutenant Rigney[3], Cox and Underwood; a First Amendment retaliation claim against Stolk; a deliberate indifference to serious medical needs claim against Dr. Exum; and a Fourteenth Amendment Equal Protection claim against Chet Rigney. (ECF No. 6.)

Before the court screened Plaintiff's complaint, he filed motions seeking a preliminary injunction and/or TRO. He asks the court to order ESP officials to keep him away from every person who was in the room with him during the September 24, 2022 incident of alleged excessive force, as well as the family members of those individuals who work at ESP. Alternatively, Plaintiff requests an order that he be moved to another facility. He also asks the court order ESP medical staff to follow all medically required procedures meant to protect those who are on a hunger strike from serious harm or death. In many filings, including ECF No. 74,

---

[3] Plaintiff indicates that Lieutenant Rigney is defendant Chet Rigney's father.

Plaintiff has requested an evidentiary hearing so he can present his evidence relative to these motions.

Defendants argue that Plaintiff's motions should be denied because: his requested relief is not narrowly drawn; he cannot establish a likelihood of success on the merits because he has not exhausted his administrative remedies, and the evidence does not support his allegations; he cannot show irreparable injury is likely to occur; and he has not demonstrated the balance of equities tips in his favor or that injunctive relief is in the public interest.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires the court determine whether Plaintiff has established the following: (1) he is likely

to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, the PLRA limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999) ("When the opposing party

actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

### III. DISCUSSION

**A. Plaintiff's Allegations**

Plaintiff alleges that on September 24, 2022, he was facing the wall after being transferred to ESP, when he overheard defendant Chet Rigney tell another inmate: "Turn around, I dare you. You're not a man." Plaintiff, with his face still to the wall, said: "He is a man, sir." Chet Rigney then allegedly pulled Plaintiff to a spot with no cameras and told Plaintiff to face the wall. When he did so, Plaintiff claims he was punched, choked, slammed on his face, and a knee was put on his neck. He gasped for air and said he could not breathe. Twenty minutes later, the warden (later referred to as Drummond) came to the cell with a group of correctional officers. Plaintiff told the warden he had been beaten and was afraid. The officers told Plaintiff to lie on the ground and he complied, but officers still yelled at him to stop resisting. Then, Plaintiff alleges an officer placed an electrocution device on his genitals and shocked him for one to two minutes, and a sharp device was lodged in his anal area. He later identifies the other officers present as Gonzales and Guzman.

Plaintiff goes on to allege that Chet Rigney told him that if he said anything, he would be choked. When the nurses entered and Plaintiff started to explain his injuries and the assault, Drummond told Plaintiff "that was enough" and did not let him finish describing his injuries.

5

Chet Rigney then escorted Plaintiff to the infirmary and began twisting Plaintiff's wrists and fingers to the point he cried out. Drummond said nothing was happening to Plaintiff, and Plaintiff responded that Rigney was twisting his wrist, which caused Rigney to twist harder.

Plaintiff then claims that John Doe 1 withheld his property for three weeks after he complained about the abuse and filed a complaint under the Prison Rape Elimination Act (PREA).

Plaintiff further avers that Guzman, Gonzales, and Kicklord interfered with his medical treatment by threatening him with unpleasant consequences if he accurately described his injuries to doctors.

In retaliation for filing PREA complaints and/or grievances against Chet Rigney, Plaintiff claims that Lieutenant Rigney, Cox, and Underwood falsely claimed Plaintiff was disruptive so he could not participate in his disciplinary hearing, and Lieutenant Rigney filed a false notice of charges against Plaintiff. In addition, Stolk threatened Plaintiff with violence if he continued to file grievances.

Plaintiff then contends that he suffered from post-traumatic stress disorder (PTSD) and nightmares of being sexually abused by guards, and he told this to Dr. Exum, who would not take him seriously and sent him back to his cell without treatment.

Finally, Plaintiff alleges that Chet Rigney targets African Americans for brutal beatings, and orchestrated the use of force alleged in this action because Plaintiff is African American.

**B. Plaintiff's Motions for Injunctive Relief**

In these motions, Plaintiff states that he is afraid of the officers who were in the cell when he alleges he was physically and sexually abused, and he should not have to be in direct contact with his abusers. He claims that such separation is mandated by PREA and prison and jail

standards. Nevertheless, he asserts that Chet Rigney was allowed to escort him to a disciplinary hearing on November 4, 2022, just over a month after the incident. He claims that Chet Rigney told him on November 4, 2022, that he would make sure "they" let Plaintiff die if he was to go on a hunger strike. In addition, Chet Rigney's father, Lieutenant Rigney, authored the disciplinary charge against Plaintiff.

He contends that Caseworker Hernandez is the PREA compliance manager, who said there was no emergency in response to a grievance Plaintiff filed. Caseworker Stolk denied his request to conduct his disciplinary hearing in his cell. Plaintiff was unaware that Caseworker Stolk is married to Sgt. Stolk, who is a defendant in this action because her maiden name is Castro. Plaintiff now appears to claim that Sgt. Stolk was in the room when he was being abused. He represents that on November 2, 2022, Sgt. Stolk told him that if he kept crying, they "were going to f*** [him] up again."

Plaintiff goes on to assert that when he filed a grievance about Chet Rigney's treatment of African American inmates, Chet Rigney's father, Lieutenant Rigney, responded to the grievance.

## C. Likelihood of Success on the Merits

Plaintiff's request for injunctive relief focuses on his claim that excessive force was utilized against him in violation of the Eighth Amendment. The court finds that Plaintiff has not demonstrated a likelihood of success on the merits of the excessive force claim.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and

unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327).

"[A]n officer who harms an inmate in part of a good-faith effort to maintain security has acted constitutionally, but an officer who harms an inmate 'for the very purpose of causing harm,' … has engaged in excessive force, provided that the other elements of excessive force have been met." *Id.* at 788 (quoting *Whitley*, 475 U.S. at 321).

In determining whether the use of force is excessive, courts are instructed to examine "the extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

In a declaration in his reply brief, Plaintiff maintains his allegations that he was punched in the face, slammed on his face, choked and a knee was put on his neck, while shackled and not threatening anyone, and that his genitals were electrocuted while he was not resisting. However, Plaintiff provides no further specific details about the alleged incident.

Defendants present evidence that creates a dispute as to whether excessive force was used. They contend that Plaintiff was agitated, yelling, and causing a disturbance and making verbal threats to officers. As a result, he was placed in a holding cell, and Chet Rigney was instructed to perform an unclothed body search, as is done for all inmates arriving to ESP. They contend that Plaintiff refused to comply with orders to participated in the search. Several attempts were made to get Plaintiff to comply, to no avail. It was ordered that force be used to conduct the search. Defendants maintain that Plaintiff continued to resist orders, and Chet Rigney performed a "show of force drive stun to the concrete floor of the cell," but he did not actually deploy the stun gun to Plaintiff directly. Plaintiff eventually complied and was restrained. Plaintiff was subsequently charged with a disciplinary offense for his conduct, for which he was found guilty.

In his reply brief, Plaintiff argues there are contradictions in the correctional officers' reports.

The material facts concerning the excessive force claim are clearly in dispute. Plaintiff acknowledges this is a "he said, they said" case. Plaintiff is correct that credibility will have to be assessed, but that will occur before a jury at trial. In other words, if the factual disputes presented to the court exist when the case is at the summary judgment stage, the case will proceed to trial for the jury to hear the evidence and determine which side's version of events to believe. At this time, Plaintiff has not sufficiently demonstrated that he is likely be the one to succeed on his Eighth Amendment excessive force claim.

Defendants also argue that Plaintiff is not likely to succeed on the merits because he did not exhaust his administrative remedies before filing suit. Plaintiff admits that he did not exhaust his administrative remedies before filing this action.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).

It is likely that Defendants will file a motion for summary judgment on the basis that Plaintiff failed to exhaust administrative remedies, which is to be decided *before* the court reaches the merits of the inmate's case. *Id.* at 1170. Unless Plaintiff can show that administrative remedies were unavailable to him, in light of his admission that he has not exhausted his administrative remedies, it is likely this motion will be granted. If the time for Plaintiff to exhaust his administrative remedies under NDOC's grievance process has expired, the dismissal of his claims will be with prejudice. While this does not go to the merits of his claims, it shows a likelihood his claims may be dismissed.

In any event, Plaintiff has not sufficiently demonstrated a likelihood of success with respect to the *merits* of his Eighth Amendment excessive force claim, which weighs against granting injunctive relief.

**D. Likelihood of Irreparable Injury**

Plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 222 (emphasis original). While a plaintiff need not wait until he

is actually assaulted to obtain relief, he must demonstrate he faces imminent and irreparable injury to obtain preliminary injunctive relief. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Serv's Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (citing *Goldie's Bookstore, Inc. v. Sup. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984)). Those seeking injunctive relief must do more than just state or argue that they will suffer irreparable harm, they "must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enter., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013).

In his declaration in his reply, Plaintiff states that on November 2, 2022, Sgt. Stolk said that if Plaintiff keeps crying, "they are going to f*** [him] up." On November 29, 2022, he claims that Chet Rigney said, "Oh good you're coming to Unit 7. I'm there all the time, I'll get the last laugh." (ECF No. 26 at 20.) Then, on December 7, 2022, after Chet Rigney and another officer searched his cell, at least 50 pages of legal documents were in the toilet, and he claims Chet Rigney said to him: "I told you I would get the last laugh." (*Id.* at 21.) On December 27, 2022, Plaintiff claims that Chet Rigney served him dinner and said, "watch what happens to Blake, you're next." Shortly thereafter, there was a physical confrontation between Chet Rigney and inmate Blake. (*Id.*)

The court finds the scant assertions Plaintiff provides regarding Chet Rigney are not sufficient to support his conclusion that Chet Rigney is *likely* to harm him. Instead, his fear that Chet Rigney will harm him in the future is speculative. "Issuing a preliminary injunction based *only on a possibility of irreparable harm* is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the

plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (emphasis added, citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

This factor also weighs against granting injunctive relief.

As Plaintiff has not demonstrated a likelihood of success on the merits or a likelihood he will suffer irreparable harm in the absence of injunctive relief, his request for an order that he be separated from the alleged wrongdoers and their family members, or alternatively, for a transfer to a different facility should be denied.

**E. Request for an Order for Medical Procedures For Hunger Strikes**

Plaintiff asks the court to order ESP medical staff to follow all medically required procedures meant to protect those who are on a hunger strike from serious harm or death.

In seeking injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Id.* "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

Plaintiff's complaint does not include a claim that there have been deficient medical procedures for inmates on a hunger strike. Therefore, his request for such an order should be denied for lack of a sufficient nexus between the relief requested and the claims proceeding in this action.

**F. Request for an Evidentiary Hearing**

Plaintiff's request for an evidentiary to present evidence, including ECF No. 74, should be denied. Plaintiff had the opportunity to present evidence in support of his motion in his motion and his reply brief. After Defendants file a responsive pleading, the parties will be given the opportunity to conduct discovery, and then file dispositive motions. If the case proceeds beyond dispositive motions, the parties will proceed to trial, where they can present evidence, and will have the opportunity to question witnesses on direct and cross-examination.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motions for a preliminary injunction and/or TRO (ECF Nos. 3, 4) and his motion requesting an evidentiary hearing (ECF No. 74).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: April 4, 2023

_____
Craig S. Denney
United States Magistrate Judge